## REED v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN R'Y CO.

1. **Railroads:** DEFECTIVE CAR: NOTICE BY TELEPHONE: PERSONAL INJURY: EVIDENCE.  Where a telephone was placed in defendant's switch-yard for the very purpose of communicating with the office, and an employe who had charge of the switch crew in making up trains communicated by such telephone to the office the fact that the car in question was out of order, and received the reply from some one, "If she will hold together, send her off," *held*, in the absence of evidence to the contrary, that it must be presumed that the communication was made to and answered by some one having authority to give directions as to the matter inquired about, and that evidence of such communication was properly admitted against defendant in an action based on a personal injury caused by the defective car.  [SEEVERS, J., *dissenting*.]

2. ——: ——: PERSONAL INJURY: NOTICE: INSTRUCTION. In such case, *held* that the head switchman's knowledge that the car was defective was notice to the company; and, there being such other evidence as to place the fact of such notice beyond dispute, it was not necessary for the court to instruct the jury that without such notice the defendant would not be liable for the injury resulting from the use of the car.

3. ——: INJURY TO BRAKEMAN: VIOLATION OF RULE: IMMATERIAL. The fact that a brakeman, in coupling cars, violates one of the rules of the company in the manner of doing his work, will not defeat his recovery for an injury caused by a defect in one of the cars, where it appears that the injury would not have been avoided had he observed the rule.

*Appeal from Tama Circuit Court.*

FRIDAY, JUNE 24.

THE plaintiff was a brakeman on defendant's road. He brought this action to recover damages for a personal injury which he sustained in coupling cars at Columbus Junction. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*S. K. Tracy*, for appellant.

*Stivers & Loutham* and *J. W. Willett*, for appellee.

ROTHROCK, J.—I. The plaintiff was hind brakeman upon a freight train running between Cedar Rapids and Burlington. On the trip upon which the injury was received, the train left Cedar Rapids, going south, at about 3 o'clock in the morning. The train was made up at Cedar Rapids immediately before it started on the road. There was a Star Union Line car placed at the head of the train, and coupled to the locomotive tender. The plaintiff came into the train-yard after the train was made up. When it reached Columbus Junction, the engine was cut off, and went upon a side track for some purpose, and then came back, and the plaintiff went between the tender and the Star Union car to couple them, when he received the injury of which he complains. He claims that the Star Union car was broken and defective on account of the absence of what is called a "follow plate" under the car, and by which the draw-bar is prevented from sliding back; and that, by reason of said defect, the draw-bar was driven back, and shoved under the car so far that there was not sufficient space left between the car and the tender of the locomotive to safely make the coupling; and that in consequence thereof, he was caught between them, and permanently injured in his hips.

The defendant claimed that there was no such defect in the car, and that the plaintiff, at the time he was injured, was knowingly violating an express printed rule of the company in not using a stick to make the coupling, and that this viola-

tion of the rule increased his danger, and that, by such disobedience, he contributed by his own negligence in causing the accident.

The fact that the car was out of repair, so that the drawbar would slide back under the car, ought not to be a matter of serious dispute. To say the least, the jury were fully warranted in finding from the evidence that such was its condition. It is true that other persons, before and after the accident, succeeded in coupling the car, but the jury may have fairly found that it was done with a knowledge of the defect. Of course, the question whether it could be safely coupled to another car depended altogether upon the force with which the other car was bunted against it.

It appears from the evidence of one Montgomery, who was a switchman in the yards at Cedar Rapids, and who had charge of the switch crew in making up trains, and under whose supervision the train in question was made up, that he discovered that there was no follow plate on the back part of the drawbar, and that the draw-bar would shove back until its rim would strike the deadwood. He further testified that, upon making the discovery, he went to a switch shanty in the yards, in which there was a telephone used for the purpose of communicating with the general office and shops, and he called the general office, and stated to some one who answered his call that the car was in bad order, and the person answering his call inquired, " In what way?" and the witness told him that the back plate was gone, and received the reply, " If she will hold together, send her off." It is claimed that the testimony as to the communication by telephone should have been excluded, because it was with some unknown person, and ought not to bind the defendant. It appears that the telephone was placed in the yards for the very purpose of communicating with the office. It was the means of communication provided by the defendant; and, in the absence of any showing that some officious intruder had taken up quarters

1. RAILROADS: defective car; notice by telephone : personal injury: evidence.

in the office, and assumed to transact the business of the company, it ought to be presumed that the communication was made with one having authority to give directions as to the matter inquired about; and if Montgomery, who had charge of making up the trains, did not have the authority to set out the car without orders from the office, it was his business to ascertain to a certainty that the orders he received came from a proper source.

II.    It is insisted that the fourth instruction given by the court to the jury is erroneous, because the same does not

2. ——: ——:  direct the jury that notice must be brought to
personal injury: notice: the defendant of the defective condition of the
instruction.   car before there can be any liability for using
it.    We do not deem it necessary to set out this instruction.    It is enough to say that, as the evidence was abundant to sustain the finding that the car was out of repair as claimed, and no verdict could have been found for the plaintiff without finding that fact, the knowledge of the defendant as to its condition was not a debatable question in the case.    Montgomery, the very person of all others whose business it was to see that the train was properly and safely made up, knew that the car was in bad order, and notice to him was notice to the defendant.    Several other witnesses testified to the same fact.    Indeed, we do not think it would have been error if the court had stated to the jury that, if they believed the witnesses who testified that the car was in bad order, they should find that the defendant had notice of that fact.    The jury should be required to determine the facts about which there is dispute, and these only.

III.    It appears from the evidence that, when the plaintiff went between the car and the tender to make the coupling,

3. ——:  he had no knowledge of the defect of which he
injury to brakeman : now complains.    He was not present when the
violation of rule: immaterial. engine was attached to the car at Cedar Rapids.
   He gave the signal to the engineer to back up, and stepped in to make the coupling.    He raised the link

with his hand, and the engine came against the draw-bar of the box-car, and shoved it under the car until the pin caught the deadwood. The engine and car came so close together that he was caught and held fast until the engine started ahead.

The defendant introduced in evidence a rule prescribed by the company for the guidance of brakemen in making couplings. It is in these words: "Brakemen should not go between cars to make couplings unless the draw-bars and draft timbers are in good condition. The hand should never be used to guide the link in making couplings. Sticks should be used for that purpose. They will be found at head-quarters."

It is claimed that the plaintiff in using his hand to guide the link, instead of a stick, was guilty of a plain violation of the rule, which contributed to produce the injury of which he complains. If this proposition is correct, that is, if the violation of the rule contributed, approximately, to the injury, the plaintiff cannot recover; but, if the violation of the rule in no manner entered into or became a part of the cause of the injury, there is neither reason nor authority for holding that the plaintiff was chargeable with contributory negligence. The court below was of this opinion, and charged the jury that "there was no testimony having a tendency to show that such violation of such rule proximately tended to produce the injuries to plaintiff, and such violation of such rule would not constitute a bar to plaintiff's recovery."

Our examination of the evidence in the case leads us to the conclusion that this instruction is correct. The head brakeman, who was with the train at the time of the accident, was a witness for the defendant, and testified as follows, with reference to the use of a stick in making a coupling: "In making a coupling without the use of a stick, brakemen set the pin so it will fall itself; and, if it don't fall when the draw-bars come together, they put the pin down with the hand. In using a stick they raise the link with it, and, after

they get the link entered, they put the pin down with the hand. I mean to say that the usual way of making a coupling with a stick is to raise the link with the stick, and enter it, and then take the other hand and put the pin down. A brakeman must go just as far between the cars to make the coupling when he uses a stick as when he uses his hands alone. In coupling he would have to go so far whether he used a stick or not."

There is no evidence in the case in any manner conflicting with this. It is perfectly manifest that, if the plaintiff had raised the link with a stick, he would have been exposed to the same danger as he was by raising it with his hand. The stick would have been no protection against the draw-bar shoving back, and the cars closing upon him. The danger was precisely the same in one case as the other. We infer from this testimony that the rule prescribing the use of a stick is to protect the hands from the danger of being caught between the ends of the draw-bars. Our conclusion is that the court did not err in rulings upon the evidence, nor in the instructions given, nor in the refusal to give instructions requested by the defendant, and we think the judgment must be                                           AFFIRMED.

SEEVERS, J., dissents from the first point in this opinion.