COMER v. THE COLUMBIA, NEWBERRY AND LAURENS R. R. CO.

1. A NONSUIT will not be granted where there is some testimony in support of the allegations.

2. COMMON CARRIER—DELIVERY FOR SHIPMENT.—Delivery by a common carrier to another to transfer for it to the connecting line is not a delivery for shipment.

3. IBID.—STOCK.—Rev. Stat., 1678, requires the common carrier to feed and water stock in transit, when the owner neglects to do so.

4. IBID.—IBID.—The mere failure of a common carrier to furnish the shipper necessary facilities to water and feed his stock in transit subjects it to liability.

5. IBID.—IBID.—CHARGE.—Jury properly instructed that under the bill of lading in this case it was the duty of the common carrier to afford the shipper facilities for unloading his cattle for feed, &c., provided its trains were not delayed.

Before ALDRICH, J., Richland, April, 1897.    Affirmed.

Action by James T. Comer *v.* the Columbia, Newberry and Laurens Railroad Company.

The following is so much of the charge of the trial Judge as is necessary to show the points raised:

The defendant has presented numerous requests to charge, and it is my duty to explain them, as well as to explain any written instrument.    There are in this case two papers submitted to the Court for construction.    One is the contract between the plaintiff and the Georgia, Carolina and Northern Railway Company as to the shipment of the first load of cattle, and the other is a contract as to the shipment of the second load of cattle.    The requests to charge read as follows:

"1.  That a railroad corporation or other common carrier may contract with a shipper of live cattle for exemption from liability for damages caused by their goring."    That is correct, with this limitation, if that goring arises from the natural disposition, the natural propensity of the animals to gore the one or the other, the shipper can be relieved; but if the animals gore one another, and are excited to do so by the negligence of the railway company, then they cannot release themselves from responsibility, because it is contrary to law and public policy to allow a common carrier or any one to contract with any person to be relieved from their own negligence—"by their goring or trampling upon one another, and such contract would be binding upon the shipper."    That is correct, as I have told you, subject to the limitation which I have stated. * * *

"4. That by the terms of the contract embodied in the bill of lading, dated November 26, 1895, the plaintiff, as shipper, assumed the obligation of attending and feeding the car load of cattle referred to therein, and cannot recover damages caused by a failure to do so unless he has shown a wanton refusal on the part of the defendant to allow him to do so, and that should have been alleged in the complaint." Well, that is rather a long request. That depends upon the contract. I do not recall—it is a very long one—the use of the word "attending" in the form of the contract (looking at the contract). Yes, the second clause: "And it is further agreed that the said owner and shipper is to load, transfer, and unload the said stock (with the assistance of the company's agent or agents) at his or their own risk, and feed, water, and attend the same at his own expense and at his own risk while it is in the stock yards of said company, or at the transfer points, or where it may be unloaded for any purpose." I charge you to that extent that the contract does say at the stock yard and transfer points. Under the terms of that contract (about which I shall have something to say) the plaintiff was to attend and see to the feeding of the car load of cattle referred to therein, "and he cannot recover damages caused by a failure to do so, unless he has shown a wanton refusal on the part of the defendant." Now, that word "wanton refusal," it means a great deal. Wantonly—I cannot charge you that. "And he cannot recover damages caused by a failure to do so unless he has shown a refusal on the part, or neglect on the part, of the railroad company to afford the facilities which the contract refers to and says that the company is to furnish." Just here it is necessary for me to refer to that contract a little. I wont undertake to read it all over, but briefly stated it is this: That the defendant railway company undertook to transport these cattle over its lines which had the charge and control of the transportation, and was to have it in carrying the cattle over its line of road. It was only at the feeding places and while they were being transferred from car to

car that the plaintiff was to attend to them. Now, when he was there—when the plaintiff whose duty it was to be at the feeding and transfer places—if he was there and ready to discharge his duty, and the railroad company refused or neglected to furnish, to deliver, to carry these cars to the proper places for unloading and feeding them and transferring them, then they under the terms of their contract would have violated that contract, and they would have violated the law, because they would be guilty of negligence, if it was their duty to carry them and they failed to do it. * * *

"7. That by the terms of the contract embraced in the bill of lading, dated the 19th day of February, 1896, the plaintiff assumed the obligation of attending and feeding the car load of cattle referred to therein, and of unloading and reloading the same in case of necessity, and released the defendant corporation from all responsibility therefor, except that of furnishing reasonable assistance therefor."

Well, gentlemen, I have read the contract in your hearing. (To Mr. Lyles): That refers to while undergoing transportation?

Mr. Lyles: Yes, sir.

The Court (to the jury): I have already read to you: "That while the company's employees shall provide the owner or person in charge of the stock all proper facilities on trains and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains to unload or reload stock for any cause whatever; but cars may be left at a station upon request of the person in charge of same to be forwarded by next freight train if he so desires; and the said owner or shipper hereby further agrees that the said company shall not be liable for any damage or injury that may occur to said animals or any of them from any cause whatsoever during the time said animals may remain so unloaded, and out of the cars of said company; and in case said animals are kept over at any point by said owner or his agent beyond a reasonable length of time for feeding and watering, subject always to local laws

of any State through which they may pass while in transit." That, I charge you, is correct, with this modification: that upon the request of the shipper, if he sees that the cattle are suffering, or needing care and attention, such as rest, feeding and watering, and he makes demand upon the company to put it off at a station that he may attend to them, then, under this contract, it was their duty to do so, provided in doing so it did not delay their trains; and I have read to you it was the duty of the company afterwards to take up the car and carry it on.

These are questions of fact for you to determine. If it was the duty of the railroad company to do that, and they were requested to do so, according to the terms of the contract, and failed to do it, then they would be responsible for a violation of their contract, as I have read it to you and explained it to you. So the solution of these issues depends upon the testimony. I have tried to go over this case, it is very long. Your verdict, if you find for the plaintiff, will not exceed $190.96, the amount asked for. If the plaintiff has made out a case, but has failed to show damages amounting to that sum, then you in your verdict will award him such damages as you are satisfied he has sustained; the damages in this case being compensatory damages, to make him whole for the loss he has sustained, as set out in the complaint and the evidence before you. If he has failed to show any loss, or to prove the allegations of his complaint, your verdict will be for the defendant. You will sign your verdict with your name as foreman under it. In writing out your verdict, if you should find for the plaintiff any sum, write it out in full, and don't use figures.

Mr. Lyles: I call your Honor's attention to one thing; in your charge you stated that a transfer point referred to in the contract, was a point where the stock was to be transferred from one car to another?

The Court: Yes, sir; I mean to convey this idea. The contract provided that the shipper was to unload and load the car, whether taken off one car and put back in a car of the

same road, or transferred from one point to anywhere else. ·

Mr. Lyles: Transfer point—your Honor went on to say—that is to say, where the stock is transferred from one car to another. Is that what your Honor meant?

The Court: I confess I did not lay particular stress on that. I was following the terms of this contract.

Mr. Abney: I think your Honor has already explained that a transfer was from a car to a car, or loading and reloading in the same car.

The Court: Yes, sir.

Mr. Lyles: Transfer point means: transfer from one car to another, or loading or reloading?

The Court: Yes, sir, I think the contract reads that way.

The defendant appeals, upon the following exceptions:

1. Because his Honor, the presiding Judge, refused defendant's motion for a nonsuit as to the first cause of action, upon the first ground thereof, to wit: That there was an entire failure of evidence of the length of time that the cattle in question were in the custody of the defendant company, and that the defendant company ever had knowledge that the shipment was intended to go over the South Carolina and Georgia Railroad.

2. Because his Honor, the presiding Judge, refused defendant's motion for a nonsuit as to the first cause of action, upon the second ground, to wit: Because plaintiff's evidence showed when the defendant company did bring the carload of cattle to the city of Columbia, and within twenty-eight hours of the time they were loaded did deliver them to the Atlantic Coast Line, a line of railroad connecting the defendant company with the city of Charleston.

3. Because his Honor, the presiding Judge, refused defendant's motion for a nonsuit as to the first cause of action, upon the third ground, to wit: That the plaintiff's testimony showed that the carload of cattle had been shipped at a reduced rate upon a bill of lading which embodied a special contract to the effect that, in consideration of the reduced

rate which was offered, and in consideration of the free transportation which was given to the plaintiff, he would assume the task of loading and unloading, and feeding and watering and otherwise caring for his stock while in transit, and that if there was any failure in attention, the failure was due to the breach of plaintiff's contract, and, therefore, he could not recover for his own wrong.

4. Because his Honor refused defendant's first request to charge: "that a railroad corporation or other common carrier may contract with a shipper of live cattle for exemption from liability for damages caused by their goring or trampling upon one another, and such contract would be binding upon the shipper;" but modified the same by saying: "That is correct, with this limitation, if that goring arises from the natural disposition, the natural propensity of the animals to gore the one the other, the shipper can be relieved; but if the animals gore one another, and are excited to do so by the negligence of the railway company, then they cannot release themselves from responsibility, because it is contrary to law and public policy to allow a common carrier, or any one, to contract with any person to be relieved from their own negligence."

5. Because his Honor refused defendant's fourth request to charge as follows, to wit: "That by the terms of the contract embodied in the bill of lading, dated November 26th, 1895, the plaintiff, as shipper, assumed the obligation of attending and feeding the carload of cattle referred to therein, and cannot recover damages caused by a failure to do so, unless he has shown a wanton refusal on the part of the defendant to allow him to do so, and that should have been alleged in the complaint;" but modified the same by saying: "Now, gentlemen, that word 'wanton refusal,' it means a great deal. 'Wantonly'—I cannot charge you that. And he cannot recover damages caused by a failure to do so, unless he has shown a refusal on the part, or negligence on the part, of the railroad company to afford the facilities which the contract refers to and says that the company is to

furnish;" thereby indicating that a mere neglect on the part of the defendant company, or its employees, or others acting for it, to afford facilities which the contract refers to and says the company is to furnish, would make the defendant company liable for damages resulting from the failure of the plaintiff to feed or attend the stock, without showing any efforts on the part of the plaintiff to have defendant company to afford the facilities referred to.

6. Because his Honor further modified the said request, and in so modifying the same charged the jury that "It was only at the feeding places, and while they (the cattle) were being transferred from car to car, that the plaintiff was to attend to them." Thereby indicating that there was no obligation imposed by the contract upon the plaintiff to attend the cattle at points of transfer from one line to the other, and that there was no obligation imposed by the contract upon him to avoid the dangers of delay consequent upon the transfer of the car from one line to another.

7. Because his Honor, in further modifying said request to charge, charged as follows, to wit: "Now, when he was there—when the plaintiff whose duty it was to be at the feeding and transfer places—if he was there and ready to discharge his duty, and the railroad company refused or neglected to furnish, to deliver, to carry these cars to the proper places for unloading and feeding them and transferring them, then they, under the terms of their contract, would have violated that contract, and they would have violated the law, because they would be guilty of negligence, if it was their duty to carry them and they failed to do so." Thereby indicating (1) that a mere neglect on the part of the defendant company to furnish, to deliver, to carry these cars to the proper places for unloading and feeding them and transferring them, would under the terms of the contract be a violation of the contract; and (2) that such violation would make the defendant company guilty of negligence; and (3) that for such violation, without special allegation

thereof, the defendant company would, in this action, be liable for the damages alleged.

8. Because, as to the second cause of action, his Honor refused defendant's seventh request to charge: "That by the terms of the contract embraced in the bill of lading, dated the 19th day of February, 1896, the plaintiff assumed the obligation of attending and feeding the car load of cattle referred to therein, and of unloading and reloading the same in case of necessity, and released the defendant corporation from all responsibility therefor except that of furnishing reasonable assistance therefor;" but modified the same by charging: "That is correct, with this modification, that upon the request of the shipper, if he sees that the cattle are suffering, or needing care and attention, such as rest, feeding, and watering, and he makes demand upon the company to put it off at a station that he may attend to them, then under this contract it was their duty to do so, provided in doing so it did not delay their trains; and I have read to you it was the duty of the company afterwards to take up the car and carry it on."

9. Because, in further modifying the said request to charge, his Honor charged: "These are questions of fact for you to determine. If it was the duty of the railroad company to do that, and they were requested to do so, according to the terms of the contract, and failed to do it, then they would be responsible for a violation of their contract, as I have read it to you and explained it to you. So the solution of these issues depends upon the testimony." Thereby indicating: (1) that it was for the jury to determine what was the binding force of the written contract in evidence; and (2) that the defendant company would be liable in the present action for the damages alleged therein, because of a breach of such a contract to put the car at a proper place, when no such contract was alleged or damages resulting therefrom claimed or proven.

10. Because, when an explanation was asked of his Honor as to a passage in his charge, he again stated that " 'transfer

point,' as used in said contract, means transfer from one car to another, or loading or unloading." Thereby indicating to the jury that there was no obligation, under the terms of the contract, upon the plaintiff to attend the cattle at points where the car was transferred from one line to another, and no obligation on his part to exert himself to see that the said cattle were promptly transferred from one line to another.

*Mr. W. H. Lyles,* for appellant, cites: *Defendant company only liable to transfer and deliver to connecting line:* 25 S. C., 249. *Contract of shipment legal:* 26 S. C., 258; 39 S. C., 60. *And defendant not responsible for negligence of plaintiff:* Rev. Stat., 1678; 41 S. C., 331; 105 U. S., 120; 66 N. Y., 98.

*Messrs. Abney & Thomas,* contra, cite: *Defendant had notice of time of shipment by bill of lading:* Rev. Stat., 1678; 27 Am. & Eng. R. R., 259; 53 Ala., 19. *Each carrier is presumed to receive goods in same condition as delivered to first:* 7 S. R., 544; 75 Ala., 587; 8 Baxt., 268; 84 Ala., 173; 59 N. Y., 611.

March 24, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff, in his complaint, sets forth two causes of action. As to the first, the allegations are: 1st. That the defendant is a corporation, doing business as a common carrier, in the transportation, by railroad, of goods, wares and merchandise between Columbia, South Carolina, and Clinton, South Carolina. 2d. That the Georgia, Carolina and Northern Railroad Company is likewise engaged in the transportation of goods through the State of South Carolina, making a connection with the defendant company at Clinton; that on the 26th of November, 1895, the plaintiff delivered to the said Georgia Carolina, and Northern Railroad Company, at Comer, in the State of Georgia, thirty-eight head of cattle, to be transported over its road to Clinton, and there delivered to the defendant company, to be by it transported to Columbia, and there

delivered to the South Carolina and Georgia Railroad Company, or to some other connecting line, for transportation to Charleston, S. C.; that the said Georgia, Carolina and Northern Railroad Company transported the said cattle to Clinton, and there delivered the same to the defendant company on the 27th of November, 1895; that the defendant company then and there received said cattle, as a common carrier, and transported the same to Columbia, where they were delivered to the South Carolina and Georgia Railroad Company, for transportation to Charleston.    3d. That the defendant company, "after receiving said cattle for transportation as aforesaid, and while the same were in their possession, care, and custody, negligently and carelessly, and regardless of their duty to the plaintiff as a common carrier, kept the said cattle confined in cars, without unloading the same for rest, and without watering and feeding them," for a period of forty-two consecutive hours, including the time during which they were confined without rest and without food and water by the Georgia, Carolina and Northern Railroad Company; that defendant, when it received the cattle from the Georgia, Carolina and Northern Railroad Company, well knew the time they had been confined in the cars of said last mentioned company without rest, food or water; and that by reason of such carelessness and negligence on the part of the defendant company said cattle were injured and damaged to the amount of $140.96.

The allegations in support of the second cause of action were: 1st. Practically the same as the first allegation upon which the first cause of action was based.    2d. After the same allegation, as to the Georgia, Carolina and Northern Railroad being a connecting line with the defendant company at Clinton, as is made in reference to the first cause of action, proceeds, substantially, as follows: that on the 19th of February, 1896, the plaintiff delivered to the Georgia, Carolina and Northern Railroad Company, at Athens, in the State of Georgia, thirty-two head of cattle, to be transported to Clinton, and there delivered to the defendant com-

pany, to be by it transported to Columbia, and there delivered
to the South Carolina and Georgia Railroad Company, or
some other connecting line, for transportation to Charleston;
that the said Georgia, Carolina and Northern Railroad Com-
pany transported said cattle to Clinton and there delivered
the same to the defendent company on or about the 20th of
February, 1896; that the defendant company then and there
received said cattle, as a common carrier, for transportation
to Columbia, to be by it there delivered to a connecting
line for transportation to Charleston; and that defendant
company thereafter, at Columbia, delivered the cattle to the
South Carolina and Georgia Railroad Company which were
by it transported to Charleston.    3d. That the defendant
company, after receiving said cattle for transportation as
aforesaid, "regardless of their duty to the plaintiff as a com-
mon carrier, negligently and carelessly handled the said
cattle while upon its cars, and negligently and carelessly
confined the said cattle in cars without unloading the same
for rest, and without watering and feeding the same, and
by reason of said careless and negligent conduct of the de-
fendant," some of the cattle were injured, to the damage of
the plaintiff $50.

The defendant, by its answer, sets up two defenses.  For
a first defense: 1. It admits the allegations contained in
the first paragraphs of both causes of action, and admits that
the Georgia, Carolina and Northern Railroad Company is
a corporation and operates a line of railroad, as alleged in
the complaint in reference to both causes of action.   2. It
denies each and every other allegation contained in the com-
plaint.   For a second defense: 1. It makes the same admis-
sions as are made in the first paragraph of its first defense.
2. It admits that the carload of cattle referred to in the state-
ment of the first cause of action was delivered to defendant
at Clinton about the day stated in the complaint.   3 It de-
nies each and every other allegation contained in the com-
plaint, and it alleges that the said carload of cattle was duly
delivered by defendant to the Atlantic Coast Line, "within

the time prescribed by law, for transfer to the city of Charleston."

The case came on for trial under the pleadings, as above stated, before his Honor, Judge Aldrich, and a jury. At the close of the testimony on behalf of the plaintiff, a motion for nonsuit was made, and refused. At the close of the testimony, the Circut Judge charged the jury as is set forth in the "Case." A copy of the charge will be embodied in the report of this case. The jury rendered a verdict in favor of the plaintiff for $190.96, and judgment having been entered thereon, the defendant appealed, upon the several exceptions set out in the record, which will also be embodied in the report of this case.

The first, second, and third exceptions impute error to the Circuit Judge in refusing defendant's motion for a nonsuit as to the first cause of action, but there is no exception to the refusal of the nonsuit as to the second cause of action. The first ground is: "That there was an entire failure of evidence of the length of time that the cattle were in the custody of the defendant company, and that the defendant company ever had knowledge that the shipment was intended to go over the South Carolina and Georgia Railroad." There was certainly some evidence as to the time the cattle were in the custody of the defendant, for the plaintiff testified that the cattle were put on board the car of the Georgia, Carolina and Northern Railroad, at Comer, about 5 o'clock in the afternoon of the 26th of November, 1895, and that such car would be due at Clinton about 7 o'clock of the next morning; and the next we hear of them is that they were seen in the car in the yard—not the stock yard—of the Atlantic Coast Line at 9 P. M. of the 27th of November, 1895; that the next seen of the cattle was in the same car, about 1 o'clock in the morning of the 28th of November, when it was standing at the Atlantic Coast Line chute; again the cattle were seen in the same car, still standing at the chute of the Atlantic Coast Line stock yard, still unloaded; and, finally, the cattle were

delivered to the South Carolina and Georgia Railroad Company about 10.56 of the same morning. There was also testimony tending to show that Moore, the manager of the stock yard of the South Carolina and Georgia Railroad in Columbia, was requested by the plaintiff to look out for the cattle when they arrived and provide food for them in his stock yard; that Moore did so, and visited the yard of the Atlantic Coast Line for the purpose of ascertaining whether the cattle had arrived; that he found them, about 9 o'clock P. M., in the yard—not the stock yard—of the Atlantic Coast Line; notified Whittaker, the yard master of the Coast Line, that the cattle were billed by the South Carolina and Georgia Railroad, and desired to know when they would be delivered to his company, and that they were not delivered until 10.56 the next morning. This witness, Moore, also testified that the defendant company had no stock yard in Columbia, and that cattle brought to Columbia by the defendant company, when billed to the South Carolina and Georgia Road, would be delivered to that road through the Atlantic Coast Line yard, by the shifting engine of the Atlantic Coast Line Road. Besides, the bill of lading for these cattle issued by the Georgia, Carolina and Northern Railroad Company, which was offered in evidence by the plaintiff, had written across the face in red ink a memorandum to the effect that the cattle were watered and fed and loaded at 5 P. M. of the 26th of November, 1895, destined for Charleston, *via* defendant's line and *via* the South Carolina and Georgia Railroad. These facts certainly tended to show both of the facts of which it is claimed there was no evidence. It must be remembered that sec. 1678 of the Revised Statutes, forbidding a railroad company entrusted with the transportation of animals from keeping such animals confined in cars for a longer period than twenty-eight consecutive hours, except in certain contingencies not pertinent to this case, expressly provides that the time during which the animals have been confined without rest on connecting roads from which they are received shall be in-

4—52

cluded, in estimating the time of such confinement; and, therefore, the point here was *not* how long the animals had been confined in the cars without rest, food or water by the *defendant company*, but how long they had been so confined by defendant and its connecting road. Of course, it must be assumed that defendant company knew how long the cattle had been confined in the cars of the Georgia, Carolina and Northern Railroad Company, from whom it received the cattle, as otherwise the defendant company would not know how to discharge its duty under the provisions of the section of the Revised Statutes just referred to; for it could not otherwise know how long it would be safe for it to keep the cattle confined in its cars. There being some testimony tending to show that these cattle were so confined for a longer period than twenty-eight hours, and also some testimony tending to show that the defendant knew that the shipment was intended to go by the South Carolina and Georgia Railroad, whether sufficient or not, is not material in considering a motion for nonsuit. The first exception must be overruled.

The second exception makes the point that plaintiff's evidence showed that defendant company did deliver the cattle within twenty-eight hours to the Atlantic Coast Line, a line of railroad connecting defendant's line with the city of Charleston; and was, therefore, not guilty of the negligence alleged in the first cause of action. This exception must, likewise, be overruled, as the testimony above mentioned tends to show that the cattle were never delivered to the Atlantic Coast Line Railroad for transportation to Charleston; but, in fact, were delivered for such purpose to the South Carolina and Georgia Railroad; and that the yard and shifting engine of the Atlantic Coast Line Road were merely used by defendant company for making such delivery—it having no facilities of its own for such purpose.

The third exception makes the point that plaintiff's evidence showed that the cattle were shipped under a special

contract, by which plaintiff assumed the duty of loading and unloading, feeding, and watering the cattle; and if there was any failure in the performance of this duty, it was the fault of the plaintiff himself, and hence he could not recover. This exception ignores the express provision of the section of the Revised Statutes above referred to, by which the railroad company, in case of default of the owner of the cattle in performing this duty, is required to perform the same at the expense of the owner, giving the company a lien on the cattle to reimburse itself for such expense; and it also ignores another provision of the special contract, that the railroad company is required to furnish the owner with all proper facilities for taking care of the cattle. This exception must, therefore, be overruled.

The fourth exception does not seem to be pressed in the argument of counsel for appellant, and hence need not be considered. We may say, however, that even if pressed, it could not be sustained. We see nothing in the pleadings or in the testimony upon which the exception could be based. It is not alleged that the cattle were injured by being gored or trampled upon by the others, and we find no testimony upon that point. Besides, we see nothing in the special contract upon which to base this exception; for there was no provision that the carrier should not be liable for injuries caused by the goring or trampling upon some of the cattle by the others. Indeed, there was no necessity for such provision; for the case of *Bamberg* v. *S. C. Railroad Co.*, 9 S. C., 61, shows that a carrier of live animals is not liable for damages occasioned by the inherent character or propensities of the animals. We are not prepared to say that the Judge erred in the limitation which he put upon the defendant's request. But, as we have said, the question does not properly arise in this case, and need not, therefore, be decided.

The fifth exception seems to make the point that a mere failure on the part of the railroad company to furnish the necessary facilities to the plaintiff to enable him to

4    perform the duty assumed by him, under the special contract, of feeding and watering and otherwise taking care of the cattle, would not subject the company to liability, but that there must be a wanton refusal on the part of the company to furnish the necessary facilities. We cannot accept that view, for there is nothing in the terms of the special contract, or in the statute, or in the nature of the case, which would warrant such a requirement.

The sixth and tenth exceptions both impute error to the Circuit Judge, in indicating to the jury that there was no obligation on the plaintiff to look after the cattle at points where the cars containing them were transferred to a connecting line of railroad. These exceptions are based upon a misconception of the Judge's charge; and we think a reading of the charge as connected with the colloquy between the Court and the counsel at the close of the charge, is quite sufficient to vindicate the charge from the error imputed to it. These exceptions must, therefore, be overruled.

The points raised by the seventh exception are disposed of by what has already been said. Practically, the plaintiff's case was based upon the theory that his cattle entrusted to the defendant for transportation, were kept confined in cars without rest, food or water for a longer period than that prescribed by law; and that while, under the special contract, it was the duty of the plaintiff to attend to the resting, feeding, and watering of his cattle, it was at the same time the duty of the defendant to afford plaintiff the necessary and proper facilities for so doing; and the defendant having neglected to perform its duty, whereby the plaintiff was unable to perform his, the defendant was liable for the damages sustained by the result of such negligence. We do not, therefore, see that there was any error in modifying defendant's fourth request, and we do not see that the issues presented by the pleadings were changed by such modification.

The eighth exception really presents a point already dis-

posed of. The modification of defendant's seventh request, especially when qualified as it was, cannot be regarded as error. If the plaintiff discovered that his cattle were suffering while in transit, it was clearly his duty to provide for them; but it was, at the same time, the duty of the defendant to afford him the necessary facilities for doing so. If it was necessary to unload the cattle at Newberry, where there was a stock yard, into which the cattle could have been unloaded and taken care of, it was the duty of the defendant company to afford the necessary facilities for that purpose, "provided in doing so it did not delay their trains;" and the modification, qualified by the words which we have put in quotation marks, was unexceptionable.

The ninth exception raises two points: 1st. That the Judge left it to the jury "to determine what was the binding force of the written contract in evidence," by which is meant, as we learn from the argument of counsel, that he left a question of law to the jury. We do not so understand the language of the Circuit Judge. He read the contract to the jury and instructed the jury that, under that contract, it was the duty of the defendant to afford the plaintiff proper facilities for unloading the cattle, and resting, feeding, and watering them, provided the company in doing so did not delay their trains; and he left the question of fact to the jury as to whether defendant had performed its duty as thus explained to them. The second point raised by this exception is that, by his modification of the seventh request, the Circuit Judge instructed the jury that the defendant would be liable in the present action for a breach of a contract not alleged in the pleadings. This point has been disposed of by what has already been said.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.