15095

COHEN v. STANDARD ACCIDENT INS. CO.

(9 S. E. (2d), 222)

534

*Messrs. Douglas McKay* and *J. B. McCutcheon,* for appellant,

*Messrs. C. T. Graydon* and *John Grimball,* for respondent,

May 31, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The action was brought in October, 1937, by the plaintiff against the defendant for the recovery of damages for the alleged wrongful cancellation of a forthcoming bond, by reason of which the plaintiff alleges that he was unable to

reopen a liquor store at Myrtle Beach, South Carolina. Tht trial resulted in a verdict against the defendant for actual damages.

There are several grounds of appeal, but the gravamen of the defendant's case is that the Court refused to grant its motion for a directed verdict, based mainly upon its contention that there was no evidence tending to prove that the Standard Accident Insurance Company had cancelled, or ordered the nonacceptance of the bond in question.

The factual background of the case shows that the plaintiff, Murphy Cohen, and one Brooks Baldwin, operated together a liquor store at Myrtle Beach in 1936, under the name of Carolina Liquor Store—whether as partners or otherwise it is unnecessary to consider at this time. As a result of disagreements and disputes between them, the plaintiff brought an action on July 2, 1937, against Baldwin and the Carolina Liquor Store, praying, among other things, for an accounting, and for the appointment of a Receiver. As a result of this suit the doors of the business were closed and a Receiver appointed. On July 16, 1937, Baldwin, apparently under the belief that the suit instituted by Cohen had been abandoned, brought suit against the latter, praying for similar relief, including the appointment of a Receiver. Thereafter, it appearing that the Cohen suit had not been abandoned, the action brought by Baldwin was dismissed, on July 27, 1937.

On or about August 1, 1937, the plaintiff decided to secure a bond in double the value of the property, which would enable him when filed to reopen the store. He went to Columbia and solicited the aid of John L. Mimnaugh of the Jordan Insurance Agency, who advised him that he could not write the bond in this State, and would have to go out of the State to secure it. For this purpose Cohen accompanied Mimnaugh, in the latter's car, to Augusta, Georgia, and there saw Mr. I. H. Cohen (not related to the plaintiff), an

agent of the defendant, who issued the bond which has given rise to the present action.

The bond was executed by Murphy Cohen, as principal, and by Standard Accident Insurance Company, as surety, by I. H. Cohen, its attorney in fact. It bears the names of two persons as witnesses, and immediately below their signatures appears the name of "John L. Mimnaugh." Under the name of Mimnaugh appear the words "S. C. Agent." The bond was issued on August 4, 1937, and was delivered to Murphy Cohen, who says that he paid the sum of $150.00 therefor to Mimnaugh. On the fifth or sixth of August, 1937, the bond was presented to Mr. John Holt, Clerk of Court for Horry County, in which county the receivership action had been brought, whose duty it was to approve and file bonds. Mr. Holt refused to approve the bond, and the plaintiff contends that the refusal was due to a telephone message purporting to have originated from the Atlanta office of the defendant, directing the clerk not to accept the bond but to forward it to Atlanta.

The main issue in this appeal has to do with the admissibility of the testimony concerning this telephone call, upon which the plaintiff relies to show wrongful cancellation on the part of the defendant. The trial Court admitted the testimony over the objection of the defendant.

Mr. Holt testified that the bond was offered to him by the plaintiff, and that it was acceptable in form and amount. That before he had taken any action on it, and while the attorneys for Murphy Cohen and Baldwin were in his office discussing the matter, he received a telephone call purporting to be from the Atlanta office of the Standard Accident Insurance Company. It is admitted that Mr. Holt did not know the identity of the person who spoke with him over the telephone, did not recognize his voice, and could not recall the name he gave. In reply to the question, "What did he tell you to do?" he said: "He advised that he wanted the bond returned to him; that he didn't want me to approve

the bond, but to return it to his office." After rejecting the bond, Mr. Holt did not return it to the defendant, but delivered it to the plaintiff's attorney.

■ The general rule is that in order to introduce evidence of a telephone conversation for communication otherwise unobjectionable, the identity of the person who is claimed to have talked over the telephone must first be satisfactorily established by the party seeking the introduction of the telephone conversation. The rationale of the principle is that to hold one responsible for statements and answers made over the telephone by unidentified persons would open the door for fraud and imposition. The rule, however, is subject to certain exceptions relating to calls made to or from business offices, where the conversation carried on is one regarding the business transacted by such office or business establishment. 20 Am. Jur., Section 366, page 334.

■ According to the weight of authority, evidence is admissible as to a conversation over the telephone where the witness called for a designated person or firm at his or its place of business, and the person answering the call claims to be the person called for, or to represent him or it, and the conversation carried on is one regarding the business transacted by such person or firm. In such cases if the communication was such that it might properly have been made to one found in the office or place of business called, who assumed to have authority to receive it, and who, so far as the contrary appears, did have such authority, the telephone conversation is admissible without further evidence to· identify the particular person with whom it was had. This rule is said to be based upon apparent necessity, in view of the constant use of telephones. *Gilliland & Gaffney v. Southern R. Co.,* 85 S. C., 26, 67 S. E., 20, 24, 27 L. R. A. (N. S.), 1106, 137 Am. St. Rep., 861; 20 Am. Jur., Section 367, page 335, Annotation, 71 A. L. R., 41, 105 A. L. R., 335.

The case of *Gilliland & Gaffney v. Southern Railway, supra,* is typical of those cases where the witness himself puts through a call to a business office. In the cited case plaintiff testified that he called the defendant's railroad office with reference to stock damaged in transportation; that someone, whom he did not know and whose voice he did not recognize, answered and told him to get a veterinary surgeon and have an examination made of the injured animals, and the company would settle the bill. The railroad company contended that this conversation was inadmissible because of falure to identify the person speaking from its office; and further, that the evidence failed to show that such person was authorized to speak for the company. In passing upon the question the Court said:

"The soundness of this proposition depends on whether one who answers a telephone call from the place of business of the person called for, and undertakes to respond as the agent, is presumed to speak for him in respect to matters of the general business carried on by such person at that place. The authorities are not in accord, but we think the weight of reason and authority is in favor of such presumption. Those who install telephones in their places of business in connection with a telephone exchange, and use them for business purposes, impliedly invite the business world to use that means of communicating with them with respect to the business there carried on; and the presumption is that they authorize communications made over the telephone in ordinary business transactions. * * * The reason is the same as that for the presumption that a business letter, properly directed, and sent by mail, reaches the business office of the addressee, and is opened by him or his authorized agent.

"The presumption that the person who answers is authorized to speak may be very slight or strong, according to the circumstances, but the statements of such person should be admitted in evidence as *prima facie* the statements of one having authority to speak. It is important to observe that th

presumption extends only to communications relating to the usual business carried on at the place from which the telephone communication comes    *    *    * ."

In the case at bar we are dealing with the admission of evidence of a telephone conversation originating from a business office. Mr. Justice Woods, who wrote the opinion of the Court in *Gilliland & Gaffney v. Southern Railway Company, supra,* cited, among other cases, *General Hospital Soc. v. New Haven Rendering Company,* 79 Conn., 581, 65 A., 1065, 1066, 118 Am. St. Rep., 173, 9 Ann. Cas., 168. This case, like the present one, involves the admissibility of a telephone conversation originating from a business office. The action was brought to recover for hospital treatment given certain employees of the defendant. The witness whose testimony was objected to, was an agent of the plaintiff hospital, who testified that he was in the plaintiff's employ and in charge of telephone calls; that he received a telephone call purporting to be from the defendant company asking for the dispatch of an ambulance to the place of business of the defendant for two men who had been severely burned. The Court held that this testimony was plainly admissible, and said : "A conversation by telephone between an agent of the plaintiff at its office with a person in the office of the defendant, speaking for the defendant, unaccompanied by evidence that the person speaking for the defendant was authorized to use the defendant's telephone for the purpose of communicating messages from the office of the defendant, other than a presumption arising from the use of the defendant's telephone in the defendant's office, and the course of business and experience necessarily involved in the use of this instrumentality for communication is *prima facie* admissible for any purpose that a conversation with a person at the office of the defendant who is apparently in charge of the office as the defendant's representative would be admissible. *Rock Island & P. Ry. Co. v. Potter,* 36 Ill. App., 590, 592; *Reed v. Burlington, Etc., Ry. Co.,* 72 Iowa,

166, 33 N. W., 451, 2 Am. St. Rep., 243; *Wolfe v. Missouri Pac. Ry. Co.,* 97 Mo., 473, 481, 11 S. W., 49, 10 Am. St. Rep., 331, 3 L. R. A., 539. The fact that a person in the defendant's office apparently in charge as its representa- tive told the plaintiff to send an ambulance, as testified, is a fact relevant to the issues raised by the pleadings. * * *"

In the instant case, the plaintiff obtained the bond in ques- tion from the defendant on August 4, 1937. On the next day, or the second day thereafter, when the bond was presented to Mr. Holt, the Clerk of Court, for his acceptance, the lat- ter received a telephone call purporting to be from the home office of the defendant in Atlanta, requesting him not to ap- prove the bond, but to return it to the Atlanta office. The identity of the person speaking, it is true, was unknown, but he showed a complete familiarity with the transaction in question, and it is not suggested in the record that the communication could have originated from any other source save that of defendant's office. Nor is it suggested that this message did not come from appellant's office, or that some- one else might have sent it, or that anyone else would have had any interest in making the communication. It is to be observed, too, that the communication related to a matter directly connected with the general business of the defend- ant. In fact, it had to do with a transaction which had just been entered into two days before.

The defendant introduced evidence, but nowhere touched upon the circumstances connected with this telephone mes- sage. It did not disavow knowledge of the sending of the message purporting to be from its office, nor disclaim the authority of the person speaking for it.

Under the facts and circumstances of this case, we think the evidence objected to was admissible as *prima facie* the statements of one having authority to speak. The probative force of the evidence was for the jury, and as was said in the *Gilliland & Gaffney case,* the presumption that the call

was made and the communication given may be very slight or very strong according to the circumstances.

Over the objection of the defendant, the plaintiff was ██ permitted to testify that Mimnaugh (who was not offered as a witness) told him nine months after the issuance of the bond that it had been cancelled at the Atlanta office of the defendant by a Mr. Bamberg, and further to quote Mimnaugh as saying: "Murphy, you got a rotten deal on that one." It is claimed that this testimony was inadmissible.

Error is likewise assigned to the trial Court because it held as a matter of law that Mimnaugh was an agent of the defendant.

In our opinion, the appellant's contention on both of these grounds should be sustained.

The plaintiff takes the position that Mimnaugh at the time he made these alleged statements was an agent of the defendant, but there is no evidenec of this in the record. Aside from the fact that the bond was signed by Mimnaugh, with the added words, "S. C. Agent", after his signature, there is no evidence tending to show that Mimnaugh had ever had any employment with defendant. There was evidence in the case from which a reasonable inference could be drawn that he was not the defendant's agent. If there was any agency at all it was a special agency, confined solely to the one transaction. At the time Mimnaugh made the alleged statements to Murphy Cohen, his special agency, if it had ever existed, had long since terminated, and it cannot be said that he was acting within the scope of his agency. When Mimnaugh had the purported conversation with the plaintiff, he was attempting to sell to the latter another and entirely different bond, and, so far as the record shows, for an entirely different company.

In our opinion, the alleged statements by Mimnaugh were clearly inadmissible, and should have been stricken out in response to the appellant's motion. *Williams v. Western Un-*

*ion Tel. Co.,* 138 S. C., 281, 136 S. E., 218; *Meinhard v. Youngblood,* 41 S. C., 312, 19 S. E., 675.

Ordinarily, the admission of improper testimony is presumed to be prejudicial to the party over whose objections such testimony is admitted. It was offered here in support of the telephone conversation carried on by Mr. Holt with someone connected with the defendant's Atlanta office, and as tending to show that the defendant had cancelled the bond. We think such inadmissible evidence could well have affected the minds of the jury and influenced their verdict.

Appellant contends that the Court erred in refusing to direct a verdict in its favor on the ground that there was no evidence of damage sustained by the plaintiff to warrant the submission of that issue to the jury. We will not undertake a review of the evidence on this issue. We have carefully read the record, and we think that more than one reasonable inference could be drawn from the testimony on this question. In our opinion, the Court committed no error in submitting this issue to the jury.

Because of error in allowing the introduction in evidence of the inadmissible testimony relating to the alleged statements of Mimnaugh to the plaintiff concerning the cancellation of the bond, we think the appellant is entitled to a new trial.

Judgment reversed, and case remanded.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES CARTER and J. HENRY JOHNSON and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.