## CRAWFORD v. SOUTHERN RY. CO.

1. PRINCIPAL AND AGENT—EVIDENCE—RAILROADS—ENGINEER—RES GESTAE—CATTLE.—Declarations made by an engineer while cattle are loading on his train are a part of the *res gestae,* and are admissible to bind the company in an action for negligence in transportation. *Piedmont Mfg. Co.* v. *R. R.,* 19 S. C., 353, *distinguished from this.*

2. EVIDENCE—EXPERT—CATTLE.—Upon the question of loss of weight in cattle in transportation, the shipper may testify what weight he received pay for, and as expert what loss there would be in such shipment.

3. IBID.—WITNESS—MOTION TO STRIKE OUT.—When a witness in answering a question goes farther than permitted by the Judge's ruling, the remedy is motion to strike out so much of the answer.

4. NEGLIGENCE—CATTLE.—A COMMON CARRIER can not exempt itself from liability for overloading cattle on a car by a contract making it the duty of the shipper to load them.

5. INTERSTATE COMMERCE—COMMON CARRIER.—Rev. Stat. 1678, providing that no common carrier shall overload its cars in transporting live stock, is not contrary to interstate clause of U. S. Con. in an interstate shipment.

6. COMMON CARRIER—LIVE STOCK—BURDEN OF PROOF.—A special contract with a shipper of live stock by a common carrier requiring him or his agent to ride on the train and attend to the feeding, &c., only extends the grounds of exemption from liability for loss, and in such case the burden of proof is on defendant to show that the loss was occasioned by failure of shipper to perform his part of the contract. *Baker* v. *Brinson,* 9 Rich., 201; *Johnstone* v. *R. R.,* 39 S. C., 55; *Wallingford* v. *R. R., 26* S. C., 258, *explained.*

Before GAGE, J., Fairfield, September, 1898.   Affirmed.

Action by D. A. Crawford against Southern Railway Co. for damage to cattle in transportation. The following is a copy of one of the contracts on which the cattle were shipped:

(Original—read this contract.) Southern Railway Company. Notice.—Live stock in car loads will not be taken at the special rates given, but will be charged full tariff rates unless owner so desire and agent execute the following live stock contract:

WINNSBORO, S. C., Station, March 17, 1898.
Received by the Southern Railway Company, of D. A. Crawford, the following described live stock: Consignee, destination, &c.—J. W. Carson & Co., Richmond, Va. Pass No. 3825. Form S—S—T—12. Charges, $ . Description of stock—37 head of cattle. S., L. & C. Released. Sou. 42,460. Loaded at 9:30 P. M., 3—17—98. Weight 20,000. Consigned as per margin, to be transported by the Southern Railway Co. to freight station, Richmond, Va., ready to be delivered to the consignee or his order, or to such company or carrier (if the same is to be forwarded beyond said station) whose line may be consid-

ered as part of the route to the destination of said stock, it being distinctly understood that the responsibility of the Southern Railway Company as carriers shall cease at the aforesaid freight station when delivered, or when ready to be delivered, to such owner, consignee or carrier, upon the following conditions, viz: That whereas the Southern Railway Company and connecting lines transport live stock only at certain tariff rates, except when, in consideration of a reduced rate, the owner and shipper assumes certain risks specified below; now, in consideration of said railroads agreeing to transport the above described live stock at the reduced rate of $50 per car, 20,000 pounds, to Richmond, Va., and a free passage to the owner, or his agent, on the train with the stock (if shipped in car load quantities), the said owner and shipper does hereby assume and release the said railroads from all injury, loss, and damage or depreciation which the animal or animals, or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring itself or themselves, or each other; or in consequence of overloading, heat, suffocation, fright, viciousness; and from all other damages incidental to railroad transportation which shall not have been caused by the fraud or gross negligence of said railroad companies. And it is further agreed, that the said owner and shipper is to load, transfer, and unload said stock (with the assistance of the company's agent or agents) at his own risk. And it is further agreed, that while the companies' employees shall provide the owner, or person in charge of the stock, all proper facilities on trains and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains to unload and reload stock for any cause whatever; but cars may be left at a station, upon the request of the person in charge of the same, to be forwarded by next freight train, if he so directs; and the said owner and shipper hereby agrees that said railroad companies shall not be held liable for any damage or injury that may occur to said stock during the time the same may remain so un-

loaded and out of the cars, as aforesaid; and in case said stock is kept over at any given point by the said owner and shipper, or his agent, beyond a reasonable length of time for feeding and watering, subject always to local laws of any State through which it may pass while in transit, then this contract shall be held to be voidable, at the option of these railroad companies, or either of them; in which case such rates of freight may be imposed and collected by said companies as they, or either of them, may deem proper, not to exceed local rates to such point of detention. It is further understood and agreed, that the presentation of this bill of lading shall be sufficient evidence of ownership to relieve and release these companies from all liability on account of wrong delivery, but shall not be held to operate against the rights of these companies to demand, if they elect, the identification of the party presenting the bill of lading before delivering the said stock to him. And it is further agreed, that in case of accident to or delay of trains from any cause whatever, the owner and shipper is to feed, water, and take proper care of stock at his own expense, or the company may do so at the expense of owner. And it is further agreed, that the owner and shipper, or his agent or agents in charge of stock, shall ride upon the freight train on which the stock is transported, and that he does assume and release said railroad companies from all risk of personal injury while upon or about the trains of the companies. And it is further agreed, that should damage occur for which the companies may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed—for horses, mules, and ponies, $100 each; for domestic horned animals, $30 each; for yearling cattle, $20 each; for stallions, jacks, and bulls, shipped as such, $100 each; for a mare and colt together, $125; for a cow and calf together, $40; for calves and sheep, $6 each; for hogs, $5 each. And it is further agreed, that, as a condition precedent to the right of the owner and shipper to recover any damages for any loss or injury to said live stock, he will give

notice in writing of his claim therefor to the agent of the railroad company actually delivering said stock to him, whether at the point of destination or at any intermediate point where the same may be actually delivered, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same, and before said stock is intermingled with other stock. And it is further agreed, that when the stock is shipped in less quantity than a car load, the companies shall assess freight on the animal or animals at estimated weights, in accordance with the published classification, and collect freight accordingly, regardless of what the actual weight may be. And this agreement further witnesseth, that said owner and shipper has this day delivered to said companies the live stock described above, to be transported on the conditions, stipulations, and understandings above expressed, which have been explained to and are fully understood by owner and shipper.

Name of persons actually in charge of stock: G. W. Crawford. W. B. Creight, Station Agent. D. A. Crawford, Owner and Shipper.

Instructions to Agents.—Agents will indorse on this contract and copy the name of person or persons in charge of stock. The original contract, duly signed by shipper, must be given to the shipper of the stock; and a duplicate, signed and marked duplicate, sent to the division freight agent.

From verdict for plaintiff and judgment thereon, the defendant appeals, on the following exceptions:

1. Because his Honor erred in permitting the plaintiff and the witness, Owens, to testify, against defendant's objection, as to the declarations of the engineer made at Ridgeway, when the plaintiff was loading the cattle.

2. Because his Honor erred in permitting the plaintiff, against defendant's objection, to testify as to what was the shrinkage upon the cattle from written statements made to him by others.

3. Because his Honor erred in permitting the plaintiff,

against defendant's objection, to estimate the value of miss-ing cattle by comparison of the weight of the car load lot at place of shipment with the account sales of the cattle as ren-dered by the dealer making sale at place of destination.

4. Because his Honor erred in permitting the plaintiff, against defendant's objection, to prove the value of missing cattle by giving testimony of the average value of the cattle at the place of shipment.

5. Because his Honor refused defendant's third request to charge: "If you find from the evidence that the plaintiff and defendant entered into the written contracts which have been put in evidence, I charge you that said contracts are lawful contracts, binding both upon the plaintiff and the defendant; and, therefore, if you find from the evidence that the injuries to the cattle resulted in consequence of any of the animals being weak, or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright or viciousness, without negligence on the part of the railroad company, then the defendant is not liable, and your verdict must be for the defendant; because, by the terms of the contract, the plaintiff expressly releases the railroad company from any injuries or loss so caused;" and because, in that connection, his Honor charged that the plaintiff and defendant could not enter into a valid contract having for its object the release of the defendant from injuries to cattle caused by the overloading of the plaintiff.

6. Because his Honor refused defendant's sixth request to charge: "Where by a special contract the owner of cattle, in consideration of a reduced rate and of transportation for himself or his agent, agrees that he or his agent will ride on the freight train on which the stock is transported, and take care of them, the railroad company is relieved of the duties which he himself agrees to perform; and if damages result from his failure to accompany his stock and care for the same, the railway company is not responsible, if it has pro-vided said owner or his agent with proper facilities for taking care of the same, and has itself used diligence and

care to avoid the damages; and in such case your verdict must be for the defendant;" and because, in that connection, his Honor charged that, under the contracts in evidence in this case, it was not the duty of the plaintiff or his agent to travel upon the same train with the stock and care for it at every point on the trip.

7. Because his Honor refused defendant's seventh request to charge: "If you find from the evidence that the plaintiff undertook, by special contract with defendant, to go with the stock and care for it, he is bound to show that the injuries complained of were not caused by his failure to perform the duties which he had contracted to perform. And, in such case, the burden of proof is upon the plaintiff to show that the loss and damage resulted from the neglect or default of the defendant;" and because, in this connection, his Honor charged that when a railroad company sets up the defense that a loss occurred from an excepted cause, not only is the burden of proof upon the railroad company to show that the loss resulted from the excepted cause, but in such a case the railroad must go one step further and prove what the law calls negative negligence—that is, they must prove that they were not guilty of a want of ordinary care.

8. Because his Honor refused defendant's eighth request to charge: "Under the contract of shipment in this case, if you find that the same was entered into by and between the plaintiff and defendant, it was the duty of the plaintiff, or his agent or agents, to ride upon the freight train on which the cattle was transported, and to take care of the same; and if during transportation it became necessary to unload and reload the cattle, and for that purpose to untie and retie any of them, this duty of untying and retying devolved upon the plaintiff, or his agent; and if damages resulted from a failure or neglect of plaintiff to perform this duty, there being no negligence on the part of the defendant, the defendant is not liable, because the plaintiff cannot take advantage of his own default, and in such case your verdict must be for the defendant."

9. Because his Honor refused defendant's eleventh request to charge: "That the provisions of section 1678 of the Revised Statutes is only operative as to cattle shipped from one point in this State to another, and cannot affect shipments to points outside of this State;" and, on the other hand, charged that section 1678 of the Revised Statutes is applicable to the loading and shipment of cattle from points in this State to points outside of this State.

*Messrs. B. L. Abney* and *Jno. P. Thomas, Jr.*, for appellant. The latter cites: *Declarations of an employee not made within the scope of his agency should not be admitted:* 19 S. C., 373. *Plaintiff cannot recover under contract here if loss was occasioned by failure of plaintiff to accompany and care for the stock:* 91 Ga., 377. *Owner should be required to show that loss was not attributable to a failure to perform his part of the contract:* 132 Ind., 129; 50 Ark., 397; 20 Mo. App., 445. *Shipper cannot hold carrier liable for injuries from overloading or improper loading, where the contract requires him to load:* 56 Ark., 424. *Rev. Stat. 1678, cannot apply to interstate shipment:* 10 Wall., 557; 19 S. C., 319; 95 U. S., 487; 66 Fed. R., 1,013; 45 Ia., 338; 9 Wheat, 1; 12 How., 310; 91 U. S., 275; 114 U. S., 196; 102 U. S., 691; 120 U. S., 489; 14 S. C., 218; 118 U. S., 455; 23 Hun., 594; 105 U. S., 559; 38 S. C., 109. *Transportation of animals is the subject of several Federal Statutes:* U. S. Rev. Stat., 4,386, 4,390, 5,258.

*Messrs. Ragsdale & Ragsdale,* contra, cite: *Since defendant cannot contract against its own negligence, any testimony showing want of care on part of its servants is proper:* 1 Sp., 23; 27 S. C., 613; 39 S. C., 441; 14 How., 468; 5 Rich., 44; 33 S. C., 435. *There is no exemption to the liability of common carriers for goods in their charge except for an act of God or the public enemy:* 39 S. C., 55. *Burden is on carrier to show not only that he is exempt from liability by contract, but he must negative negligence:* 2

Rich., 288; 9 Rich., 201; 26 S. C., 265; 39 S. C., 55; 52 S. C., 37; 79 U. S., 262; 39 Barb., 488; 84 U. S., 357; 129 U. S., 307; 169 U. S., 135. *Defendant could not overload the cars and could not delegate that power to another, and Rev. Stat., 1678, does not contravene U. S. Constitution:* 2 Pet., 245; 3 Wall., 713; 12 How., 299; 21 How., 184; 17 Wall., 560; 95 U. S., 465; 118 U. S., 455; 124 U. S., 465; 128 U. S., 96; 162 U. S., 650; 163 U. S., 299; 165 U. S., 299; 169 U. S., 133, 311; 154 U. S., 204; 22 S. C., 236; 112 U. S., 261. *Duty of Court to construe contract in writing for jury:* 3 S. C., 251; 15 S. C., 10; 17 S. C., 477; 19 S. C., 124; 24 S. C., 497.

October 6, 1899.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   The plaintiff brought this action to recover damages from the defendant company, sustained by reason of the killing of some and the injury of others of certain cattle shipped by plaintiff upon the cars of said company.   There were three shipments, one from Ridgeway, in this State, made on the 3d of March, 1898; one from Winnsboro, in this State, made on the 17th of March, 1898, and the other from the city of Columbia, in this State, also made on the 17th of March, 1898.   By the bills of lading the defendant contracted to carry to and deliver at the city of Richmond, in the State of Virginia, each of these shipments, copies of which are set out in the "Case" —one of which (they all being of similar tenor) should be incorporated by the Reporter in his report of this case.   The jury having rendered a verdict for the plaintiff, upon which judgment was entered, the defendant appeals, basing his appeal on the several exceptions set out in the record.   These exceptions should likewise be set out in the report of this case.

The first exception imputes error in the admission of the testimony of the witness, Owens, and the plaintiff, as to certain remarks made by the engineer at Ridgeway, when the

plaintiff was putting the cattle on the train.    It ap-
pears from an examination of the "Case" at the point
where the ruling objected to was made, that while
the plaintiff was engaged in loading the car with the cattle,
that the engineer, who had charge of the locomotive by
which the train to which the car was attached was run, came
back to the platform where the loading was going on and
said, "he would kill those damn cattle before he got to Char-
lotte."    The ruling of the Court in admitting the testimony,
was based upon the ground that, being the agent of the com-
pany to run the engine, any declaration that he may have
made as to the manner in which he intended to perform that
duty, was competent.    In that view of the matter we think
there was no error in the ruling, for it is well settled that the
declarations of an agent, within the scope of his agency, are
the declarations of his principal, and are, therefore, compe-
tent.    1 Greenl. on Ev., secs. 113, 114.    If so, then the tes-
timony was not hearsay, and the objection upon that ground
cannot be sustained.    If the objection is based upon the
ground that the principal is not liable for the wilful or mali-
cious conduct of the agent (though that point is not dis-
tinctly brought out in the exception), the case of *Hart* v.
*Railroad Co.,* 33 S. C., and the cases cited at page 436, show
that such a point is untenable, where, as in this case, the con-
duct referred to is within the scope of the agency.    The case
of *Piedmont Manufg. Co.* v. *C. & G. Railroad·Co.,* 19 S. C.,
353, cited and relied upon by counsel for appellant, is not in
point, for the declarations there were made *after the event*
and not within the scope of the agency.    In that case the
rule, as we have laid it down, was distinctly approved, for
the late Chief Justice Simpson, in delivering the opinion of
the Court, says, speaking of the rules of evidence in relation
to the admissibility of the declarations of an agent to bind
the principal: "These rules would allow such declarations
when constituting a part of the *res gestae,* or when made
within the scope of the agency, but declarations made some
time after the act and beyond the scope of the agency should

not be allowed." But here the declarations in question were a part of the *res gestae,* made by the person intrusted with the duty of running the train which carried the cattle, while the train was being loaded with the cattle. The first exception must, therefore, be overruled.

Exceptions 2, 3 and 4, being of a somewhat kindred character, will be considered together. In the first place, we would remark that we do not think that these exceptions correctly represent the ruling of the Circuit Judge as to the testimony objected to. For example, we do not understand that the plaintiff was permitted to testify "as to what was the shrinkage (we suppose the word shortage would more properly express the idea) upon the cattle from written statements made to him by others," as stated in the second exception, nor do we understand that the plaintiff was permitted "to estimate the value of missing cattle by comparison of the weight of the car load lot at place of shipment with the account sales of the cattle as rendered by the dealer making sale at place of destination," as stated in the third exception. On the contrary, the ruling of the Circuit Judge as to this matter of shrinkage, as it is called, was as follows: "I think, if he is a cattle dealer and accustomed to ship cattle from South Carolina to Richmond, and if he knows what the natural shrinkage was in *transitu* from a long course of dealing, he would be familiar with those matters." Whereupon defendant's counsel interposed, saying: "I object, upon the ground that the witness must testify of his own knowledge of shrinkage. *The Court:* He cannot testify what others told him; he can testify what, in his judgment, cattle shipped from South Carolina to Richmond would lose. *Defendant's Counsel:* What they would lose from our negligence? *The Court:* Oh, no, sir." Again, the witness having stated that he knew the weights of the cattle when they left Ridgeway, was asked: "Do you know what you were paid for them when they were sold in Richmond?" replied as follows: "Yes, sir, and the weights." After some colloquy between the Court and

counsel as to whether the witness could speak of the weight of the cattle when sold in Richmond, the Court ruled that it was not competent for the witness to testify as to what anybody else told him the cattle were worth, but that it was competent for him to say, "for what weight of cattle he was paid out of the shipment." The same objections and the same rulings were made in regard to the testimony as to the shipment made from Winnsboro. So that it appears that the Circuit Judge did not rule as imputed to him in the second and third exceptions, but that his ruling was that the witness could only testify as to what he knew from his own knowledge and not as to what he heard from others, either verbally or through written statements made to him; at most, he only held that the witness could state as "a naked fact"—to use the Judge's language—what he received from the sales of the cattle in Richmond, but not what were the weights there, and what, from his experience in shipping cattle to Richmond, would be the *natural* shrinkage in *transitu*—a point not mentioned in the exceptions. These two exceptions must, therefore, be overruled.

So, also, as to the 4th exception, which relates to the Columbia shipment—we do not understand that the Circuit Judge ruled as is there imputed to him. The witness having testified that this was a very fine lot of cattle, was asked to fix the value of the two that were missing from that lot, by estimating the value of any two average cattle in that lot; but the Court ruled that he could not take "any two, but the two of least value." It may be and doubtless is true, that the witness, in testifying, went beyond the ruling of the Circuit Judge, but that was an error to be rectified, not by an exception to the ruling, but by a motion to strike out so much of the testimony as went beyond the ruling of the Circuit Judge, and it does not appear that any such motion was made. The 4th exception must, therefore, be overruled.

The 5th and 9th exceptions may be considered together. The Circuit Judge, practically, instructed the jury that not-

withstanding the clause in the special contract, whereby the owner should assume the duty of loading the cars with these animals, the defendant would still be liable for any damages occasioned by overloading the cars, because by special statute (Rev. Stat. 1893, sec. 1678), it is declared that: "No railroad company, in the carrying or transportation of animals, shall overload the cars," as no railroad company can claim exemption under one of the provisions of a special agreement which "is in derogation of the mandates of the statute." To this instruction two errors are assigned. 1st. That it is based upon an improper construction of the statute. 2d. That even if the statute was properly construed, it cannot be applied to the present case, involving interstate shipments, because (exception 9) it is in conflict with the provision in sec. 8, art. I., of the Constitution of the United States, investing Congress with the power: "To regulate commerce with foreign nations and among the several States, and with the Indian tribes," usually spoken of as the interstate commerce clause of the Federal Constitution. As to the first error assigned, we would remark, in the first place, that the rule is well settled that it is the duty of a railroad company, as a common carrier, to load its cars with all freight entrusted to it for transportation. As is said in 5 Am. & Eng. Ency. of Law, 2d edit., at page 189: "The duty of loading freight of any kind upon the cars rests, primarily, upon the carrier." This is a reasonable and proper rule for the protection both of the shipper and carrier, for it must be assumed that the agents and servants of the carrier are much better acquainted with the nature and capacity of its cars, and have more skill in properly loading the cars than the shipper. This being so, it must be assumed that the legislature, in using the language found in the statute, recognizing the well settled general rule, intended to forbid railroad companies from violating this primary duty, and imposed a penalty for such violation. It is contended, however, that by the terms of the special contracts under which these animals were shipped, the plain-

tiff expressly agreed to assume the duty of loading the cars
at his own risk, and released the defendant from any liability
occasioned by injuries or losses resulting from overloading
the cars.    This is true, except that the plaintiff did not *ex-
clusively* assume this duty, for the terms of the contract are
"that the said owner and shipper is to load, transfer and un-
load said stock (*with the assistance of the company's agent
or agents*) at his own risk;" and the testimony tends to show
that the plaintiff was assisted by the agents of the company
in loading the cars.    But waiving this, and assuming that
the cars were loaded exclusively by the plaintiff, his servants
or agents, the practical question presented is whether a com-
mon carrier—a railroad company—can relieve itself from
liability for damages resulting from injuries to or losses of
cattle entrusted to it for transportation, occasioned by over-
loading the cars in which such cattle was being transported,
by such a special contract as that relied upon in this case.
It is not and cannot be denied that, in this State at least, a
common carrier may, by special contract, limit his common
law liability, provided always that he does not thereby
undertake to exempt himself from liability for his own neg-
ligence.    *Swindler* v. *Hilliard,* 2 Rich., 286; *Baker* v. *Brin-
son*, 9 Rich., 201, and *Wallingford* v. *Russell,* 26 S. C., 258.
So that the inquiry is narrowed down to the question wheth-
er the provisions in these contracts, exempting the defendant
from liability for the consequences of overloading the cars,
is not, practically, an attempt to exempt itself from liability
for its own negligence.    If, as we have seen, it is the pri-
mary duty of the carrier to load freight of any kind
entrusted to it for transportation; and if, as was held in *Han-
nibal Railroad* v. *Swift,* 12 Wall., 262, the liability of a com-
mon carrier is not affected by the fact that the car is loaded
by the owner of the goods entrusted to it for transportation,
for upon him rests the duty to see that the packing and con-
veyance are such as to secure its safety, and the consequences
of his negligence in these particulars cannot be transferred
to the owner of the property, it would seem to follow, neces-

sarily, that the provision in these contracts exempting the defendant from the consequences of overloading the cars, is an attempt to exempt defendant from liability for negligence in performing its own duty, and cannot, therefore, avail the defendant anything, even if there were no statute forbidding a railroad company from overloading its cars with live stock. Under this view, it is scarcely necessary for us to consider the second error above imputed to the Circuit Judge by the 9th exception. But as the Circuit Judge based his charge largely, if not exclusively, upon the provisions of sec. 1678 of the Rev Stat., and held, expressly, that such statute was not affected by the interstate commerce clause of the Federal Constitution, it may be proper that we should inquire whether he erred in this respect. The question as to the scope and effect of this famous clause has been considered in a great many cases decided by the Supreme Court of the United States—the final arbiter of such a question. We do not deem it necessary, in this case, to consider the question at any length; but propose to state, briefly, some of the reasons why the Circuit Judge, in our opinion, did not err in the view which he took. In *Covington &c. Bridge Co.* v. *Kentucky,* 154 U. S., at page, 209, it is said by Mr. Justice Brown, in delivering the opinion of the Court: "The adjudications of this Court with respect to the power of the States over the general subject of commerce are divisible into three classes: *first,* those in which the power of the State is exclusive; *second,* those in which the State may act in the absence of legislation by Congress; *third,* those in which the action of Congress is exclusive, and the States cannot interfere at all." It is not true, therefore, as seems sometimes to be supposed, that any State legislation which affects interstate commerce is in conflict with the Federal Constitution, and, therefore, void. On the contrary, it is well settled by the cases cited in the *Covington Bridge &c. Co.* v. *Kentucky, supra,* that the mere fact that a State statute may incidentally affect interstate commerce, is not conclusive of the question. One very recent case,

although many others might be cited, will be sufficient to show this. In *Chicago &c. Railway* v. *Solan,* 169 U. S., 133, it was held that a statute of a State providing that no contract shall exempt any railroad corporation from the liability of a common carrier, or carrier of passengers, which would have existed if no contract had been made, does not, as applied to a claim for an injury happening within the State under a contract for interstate transportation, contravene the provision of the Constitution of the United States, empowering Congress to regulate interstate commerce. The case was this : the plaintiff, while traveling in the caboose of a freight train of defendant upon which his cattle were being transported, under a special contract, was injured by reason of defendant's negligence, and brought his action for damages. One of the defenses set up was that by a clause in the special contract under which plaintiff and his cattle were carried, it was, among others, agreed, that in consideration of a reduced rate of charges, "the company shall, in no event, be liable to the owner or person in charge of said stock for any injury to his person in any amount exceeding the sum of $500." The plaintiff obtained a verdict for $1,000, and the case was eventually carried to the Supreme Court of the United States, where the only question was whether the statute of Iowa, in which State the injuries were received, was in conflict with the interstate commerce clause of the U. S. Constitution, it being conceded that the shipment of the cattle was an interstate shipment. Regarding that case as practically identical, in principle, with the case under consideration, we quote liberally from the opinion of the Court, delivered by Mr. Justice Gray : "Railroad corporations, like all other corporations and persons doing business within the territorial jurisdiction of a State, are subject to its law. It is in the law of the State that provisions are to be found concerning the rights and duties of common carriers of persons or of goods, and the measures by which injuries resulting from their failure to perform their obligations may be prevented or redressed. Persons traveling on interstate

trains are as much entitled, while within a State, to the pro-
tection of that State, as those who travel on domestic trains.
A carrier exercising his calling within a particular State,
although engaged in the business of interstate commerce, is
answerable, according to the law of the State, for the arts
of non-feasance or of mis-feasance committed within its
limits. * * * It is equally within the power of the State to
prescribe the safeguards and precautions foreseen to be
necessary and proper to prevent by anticipation those
wrongs and injuries which, after they have been inflicted,
the State has the power to punish and redress. The rules
prescribed for the construction of railroads, and for their
management and operation, designed to protect persons and
property, otherwise endangered by their use, are strictly
within the scope of the local law. They are not, in them-
selves, regulations of interstate commerce, although they
control in some degree the conduct and liability of those
engaged in such commerce. So long as Congress has not
legislated upon the particular subject, they are rather to be
regarded as legislation in aid of such commerce, and as a
rightful exercise of the police power of the State to regulate
the rights and duties of all persons and corporations within
its limits." Exceptions 5 and 9 must, therefore, be over-
ruled.

The exceptions numbered 6 and 8 may be considered to-
gether. They both proceed upon the assumption that inas-
much as by the terms of the special contract it was agreed
that the shipper or his agent should ride on the freight train
by which the cattle were transported, and look after the load-
ing and unloading of the same *in transitu,* this relieved the
carrier from doing so, and, therefore, if the cattle
sustained any injury by reason of the failure to per-
form these duties, the company would not be liable.
But, as was held in *Comer* v. *Railroad Co.,* 52 S. C., 36,
the assumption is untenable, because it ignores the express
provision of the section of the Rev. Stat. above referred to,
which requires the railroad company to perform these duties,

if the owner or shipper fails to do so.   While, therefore, it may be true that the Circuit Judge overlooked that provision of the special contract which required the shipper or his agent to ride on the train by which the cattle were transported, yet such error was entirely harmless, for, as we shall presently show, the burden of proof was upon the defendant to show that the injuries complained of were the result of the default of the plaintiff and not due to its own negligence. These exceptions must, therefore, be overruled.   It only remains to consider the 7th exception, which presents the question as to which party must take the burden of proof in a case like this.   Counsel for appellant very properly concedes that this question is concluded by the cases of *Swindler* v. *Hilliard,* 2 Rich., 286, and *Wallingford* v. *Railroad Co.,* 26 S. C., 258, to which might have been added the cases of *Baker* v. *Brinson,* 9 Rich., 201, and *Johnstone* v. *Railroad Co.,* 39 S. C., 55.   But he contends that the reason of the rule laid down in those cases "is that the injury and manner of injury are supposed to be known only by the carrier and his servants, the owner being supposed not to know anything about it; and that as such reason does not exist in this case, where the shipper or agent is required to ride on the train and look after the cattle while *in transitu,* the rule should not be applied to this case."   But the reason stated is not the only reason for the rule.   From what is said in Baker *v.* Brinson, it is apparent that the Court rested its conclusion also upon the ground that the contract for exemption from liability from injury resulting from certain specified causes does not affect the general character of the carrier, and only extends the grounds upon which he may claim exemption, beyond those which the common law alone recognizes—the act of God, or the public enemy; and in the absence of any special contract, the carrier must show that the injury resulted from one of those two causes, and the burden of proof is upon him to show this.   Upon the same principle, where there is a special contract extending these causes of exemption, the burden of proof is upon the carrier to show that the injury

complained of resulted—not from his own negligence—but from one of the causes mentioned in the special contract. Besides this, in both Wallingford *v.* Railroad Company and Johnstone *v.* Railroad Company, there was a special contract providing that the shipper or his agent should be furnished free transportation on the train by which the live stock was transported, and the Court did not seem to think that circumstance affected the rule. It is true, that the contracts in neither of those cases *required*, but only permitted, the shipper or his agent to ride upon the train by which the live stock was transported, while the contract in this case does require the shipper or his agent to ride on the train which carried the cattle; but we do not think that this circumstance should have the effect of changing the well settled rule; more especially when, as we understand the testimony, this requirement was not complied with in this case, and the statute expressly required the railroad company to look after the cattle if the owner failed to do so. The 7th exception must, therefore, be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.