MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. J. C. HOOD ET AL.

Decided May 10, 1909.

1.—Contract of Carriage—Damages—Injury to Livestock—Notice to Carrier—Waiver—Agent.

Where the contract for the carriage of livestock stipulated that the shipper should give the carrier notice in writing of any loss or injury before the stock were mingled with other stock or removed from pens at destination, and the carrier, knowing that the shipper was claiming the animals were damaged in transportation, caused its agent to inspect them and learn their condition and take a memorandum of the claim and loss before the animals were removed from the pens at destination, and thereafter agreed that the shipper could remove them, this constituted a waiver of the written notice; and the agent of the carrier at the office at such point, entrusted by the carrier with its business there, was as a matter of law authorized to represent the carrier in this respect.

2.—Negligence—Carriers—Failure to Feed and Water—Injuries to Livestock.

Evidence held sufficient to authorize the submission of the issue of negligence on the part of the carrier in failing to water livestock while in transit.

3.—Same—Loss of Market—Damages.

Where the uncontroverted evidence showed that the mules were in no condition to be sold when they reached destination, that before they had recovered the market there had greatly declined, and that the shipper after disposing of some of them was compelled to take the remainder to other points to dispose of them, the court was authorized to submit the issue of loss of market.

4.—Charge—Measure of Damages—Weight of Evidence.

Charge upon the measure of damages held correct, and, when construed in connection with the charge as a whole, not subject to objection as assuming or stating by implication that the mules were in bad condition at the time they reached destination and that the owner suffered injury by reason of a change in the market there.

**5.—Jurors—Qualification—Challenge—Statute.**

Where there are two District Courts in one county, that a person has served as a juror in one of them for five days and in the other for three days, within the statutory period, does not constitute a ground for challenge for cause, when such person is proffered as a juror. Under the statute, in order to disqualify the juror he must have served as a juror for six days during the preceding six months in the same District Court. Revised Statutes, art. 3139.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*Coke, Miller & Coke* and *Templeton, Craddock, Crosby & Dinsmore,* for appellant.—A provision in a contract for carriage of live stock requiring notice of the injuries and character and amount of the damage to be given in writing by the shipper within a reasonable time after injuries are inflicted as a condition precedent to suit, is a reasonable limitation of the right to sue, is not against public policy, and is not in conflict with any statute in this State.

A party dealing with the agent of a corporation must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority which may prove to be entirely unfounded. Revised Statutes, art. 3379; Railway Co. v. Trawick, 68 Texas, 318; Telegraph Co. v. Rains, 63 Texas, 28; Railway Co. v. Heittner, 94 S. W., 190.

If a juror has served as many as six days in the District Court during the preceding six months he is, under the statute, disqualified for further jury service although such prior service has been partly in one and partly in another District Court of the same county, and although he has not served as a juror for six consecutive days in one District Court. Revised Statutes, art. 3139; Railway Co. v. Lester, 89 S. W., 752; Railway Co. v. Steele, 110 S. W., 173; Snow v. Starr, 75 Texas, 411; Wolf v. Perryman, 87 Texas, 112.

*Evans & Mitchell,* for appellees.

BOOKHOUT, Associate Justice.—This is a suit for damages to a carload of mules shipped from Sulphur Springs, Texas, on January 22, 1907, to Waco, Texas, claimed to have resulted from delay in transportation. A trial resulted in a verdict and judgment for plaintiff in the sum of $1,000, to reverse which defendant perfected on appeal to this court.

The contract of shipment contained a provision as follows: "The shipper further expressly agrees that. as a condition precedent to his right to recover any damages for any loss or injury to said live stock resulting from the carrier's negligence, as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train or the nearest station or freight agent of the carrier on whose line the injuries occur, before said cars leave the carrier's line, or before the live stock are mingled with other live stock or removed from pens at destination. In his notice he shall state place and nature of the injuries, to the end that they may be fully and fairly investigated, and said shipper shall, within 90 days after the happening of the injuries

complained of, file with some freight or station agent of the carrier on whose line the injuries occurred his claim therefor, giving the amount. Shippers' failure to comply with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries resulting to said live stock aforesaid." The appellant plead this provision of the contract and that plaintiff did not give notice in writing to the conductor in charge of the train or the nearest station agent or freight agent of the defendant on the line where the injuries occurred and before the cars should leave defendant's line, or before the live stock should be mingled with other live stock or removed from the pens at destination, of the damage and injuries complained of, stating the place and nature of the injuries and that the giving of such notice was a condition precedent to his right to recover damages. The plaintiff replied, among other things, that this clause of the contract was waived by defendant, setting up the facts which constituted said waiver. The plaintiff further replied that he complied substantially with said contract by filing with the agent of the defendant at Waco, the point of destination, his claim growing out of the injury to the stock during the shipment, before the stock was removed from the pens; and also that all of the injuries were not known to plaintiff until for a period of eight or twelve months, and that suit was instituted within 90 days from the date when the injuries had accrued, which, within itself, is equal to filing with the defendant its claim for injuries growing out of the shipment.

Appellee testified: "I had been to defendant's depot (at Waco) several times to inquire if the mules had come, and when I went in the agent knew me and said, 'Your mules have come.' I told him that I had been up to the pen and had saw them, and he threw out a paper for me to sign up, that the mules were in good condition. I told him I would not sign up that at all. He just threw the paper back and said if I didn't I couldn't take the stock out. I told him that I didn't want them in that condition at all. I turned around and started out, and he called me just as I was starting down the stairs, and said, 'I will send a man up there to see what you are kicking about.' A gentleman whom he sent went with me to look at the mules, and when we got there he looked over the mules and said they looked hard, and that they were gaunt and hollow and looked bad, I don't know what he told the agent, but the agent asked if I wanted them, and I told him, 'No, not in that condition,' or without the statement or agreement that I was damaged. He said he could not give that. I told him I would not take the mules, and started out again, and he called me back and said, 'You take the mules and sell them, and I will take the matter up with the company.' He said, 'You take the mules and sell them, and do the best you can with them, and I will take the matter up with the company.' I gave him my address as living at Cleburne, Texas, and took the mules out and sold them finally." He further testified that, "if they (meaning the mules) had not been over eighteen or twenty hours, a reasonable length of time, going from Sulphur Springs to Waco, when they got a drink of water, and was fed over night, they would have been in condition to have sold them, and we would have been ready to have placed them on the market. On Friday

morning, when I found the mules in the stock pens at Waco, they were gaunt and hollow, and the tails were chewed off some of them, the bush of the tail was chewed off, and they were a hard looking bunch of mules. They looked like they had been without feed thirty days instead of four. And one of the mules was crippled—hurt in the car some way; hurt in the shoulder—strained or kicked. After I got to Waco I made some investigation of the mule market. There was a shipment of mules came into Waco Friday evening, I believe, late in the evening, from Ft. Worth. For two or three days up to that time there had been no stock on the market. The price was really better than we expected, little better than the parties had told us. If our mules had been in the condition they would have been in if they had been delivered down there on the 23d, I think we could have sold them easily for $150 around. Some of them we could have sold for more money than that, and some would have sold for hardly that much. To have taken the mules off the car when they did get there, on the 25th, and to have placed them on the market, I don't believe they would have brought over $75 around, if they would have brought that. Well, there was no market for a mule like that in that condition." Again on cross-examination he stated: "After we got through with this matter (meaning the selling of the mules), neither of us sent a written claim down to the agent at Waco, because he already had a statement. He had a memorandum of what he found in connection with the condition of the animals while they were in the pen, and took it up with the company, I suppose."

The court in his charge instructed the jury that if "when said mules were delivered in the stock pens of defendant at Waco, plaintiffs did not give to the defendant any notice of, or file with any station agent of the defendant, any claim for their damages, giving the amount thereof as provided for in said contract, before said animals were mingled with other animals, or removed from the pens of the defendant, their destination at Waco, then you will find for the defendant, unless you find for the plaintiffs on the further instructions hereinafter given you on this issue. But if you find from the evidence that after said stock had been placed in the pens of the defendant at Waco that an authorized agent or servant of the defendant went with one of the plaintiffs to the stock pens, and inspected the stock and saw their condition, and there learned of plaintiffs' claim, and if you find that said agent took a memorandum in writing of plaintiffs' claim and loss, and authorized plaintiffs to remove said stock from the pens, then you are charged that you will find for the plaintiffs on this issue." This charge correctly announced the law as applicable to the facts. If the defendant, knowing that plaintiffs were claiming the mules were damaged in transportation, caused its agent to inspect them and learn their condition and take a memorandum of plaintiffs' claim and loss before the mules were removed from the pens, and thereafter agreed that the owner could remove them, this would constitute a waiver to give the written notice of damage as stipulated in the contract of shipment. (Missouri, K. & T. Ry. v. Hendricks, 108 S. W., 748.) The person acting as agent for defendant was in charge of its office at Waco, and the company had entrusted its business to

him at that point, and who, so far as the question of injury to the mules was concerned, stood in the place of the company. He was as a matter of law authorized to represent the company in this respect.

Error is assigned to the paragraph of the court's charge, reading as follows: "Now, if you find and believe from the evidence that on said date the plaintiffs and the defendant entered into a contract, and if you find that the defendant contracted and agreed and undertook, in consideration of the payment of freight charges which were then and there paid, to transport said mules to Waco within a reasonable length of time, and if you further find from the evidence that said stock were not transported and delivered by the defendant to Waco until Friday morning, January 25th, and if you further find that there was a delay in the shipment of said stock or mules, and if you further find that said delay, if any, was unreasonable, and if you further find that in consequence of said delay, if there was any delay, said mules were deprived of and denied water; and if you further find that when said animals arrived at Waco they were in an unsalable condition, and if you further find that they were gaunt, lean, lank and in a weakened condition, and if you further find that they presented a bad appearance, and if you find that when they arrived at Waco there was no sale for such stock in the condition they were in, and if you further find that the plaintiffs were unable to sell or dispose of their said stock on said market, and if you further find that the plaintiffs were thereby injured as claimed in the petition, and if you further find that the defendant in failing to deliver said stock to Waco, if there was any such failure, in a reasonable length of time was guilty of negligence as that term is defined in the first paragraph of this charge, and that such negligence, if any, was the direct cause of plaintiffs' injuries, if any, then you will find for the plaintiffs."

It is contended the court erred in submitting the issue as to whether the mules were denied water while in transit for the reason that there is no evidence to justify its submission. The plaintiff testified that he left Sulphur Springs about 4 o'clock on the afternoon of the 22d, and the mules were unloaded at Greenville and fed on the 23d about one o'clock. He says: "About between eleven and one o'clock on the 23d, I didn't know when they were going to get out. They were crowded up in the car in the west yards, and I went up and told the agent that I wanted them unloaded in the pen. They pulled them to the north pen about one o'clock, I think it was, and the mules were unloaded. I then came back down and told the agent I was ready to go when I unloaded them. When they were unloaded I turned them in the stock pens and they would not drink at all. Were big rocks and things in the water trough. I don't know what it was, but they would not drink water, and I come and told the agent I was ready to go." The testimony shows that they stayed at Greenville until the morning of the 24th, and arrived at Waco on the morning of the 25th. Plaintiff did not accompany the stock from Greenville to Waco. Construing this charge in the light of the pleading and evidence there was no error in submitting this issue to the jury.

Again, it is contended that said paragraph of the court's charge was error because it authorized a recovery by plaintiffs if plaintiff

was unable to dispose of the mules at Waco without regard to whether such inability to dispose of the mules was in any way due to any act or omission of the defendant. This contention is not sustained. The uncontroverted evidence shows that the mules were in no condition to be sold when they arrived at Waco and that before the mules had recuperated the market at Waco had greatly declined. The plaintiff after disposing of some of the mules at Waco was compelled to take the remainder to other points in order to dispose of them.

The eighth assignment of error assails as error the paragraph of the court's charge as follows: "If you find for the plaintiffs, the measure of their damages will be the difference between the cash market value of said animals at the time they should have arrived at Waco if the same had been shipped in a reasonable length of time, and the cash market value of said animals at the time they were delivered at Waco in the condition they were in and the condition the market was in at the time said mules were delivered."

It is insisted that this charge is upon the weight of the evidence in that it assumes and by implication states that plaintiffs' mules were in bad condition at the time they reached Waco; and assumes and by implication states that plaintiffs suffered injury by reason of a change in the market for mules at Waco.

The charge does not assume that the mules were in bad condition when they reached Waco, nor does it assume that plaintiffs suffered injury by reason of a change in the market. This paragraph announces a correct proposition of law, and when the charge is construed as a whole it is not subject to the criticism made by appellant.

We have held that the trial court did not err in submitting to the jury the issue as to whether appellant waived the giving of notice in writing of the damage and injuries to the mules before the live stock were mingled with other live stock. Assignments nine, ten, eleven and twelve, which complain of the paragraph of the court's charge submitting this issue and of the refusal of certain requested charges by appellant, are overruled.

On Monday, the first day of June, 1908, being the first day of the third week of the May term of the District Court of Hunt County, Sixty-second Judicial District, there appeared for the week eleven of the regular jurors selected by the jury commissioners for said week, which said jurors were duly sworn and empaneled. Thereupon the above cause being called for trial, and there being eleven jurors in the jury panel, the court ordered the sheriff to summon thirteen other jurors as talesmen to make the required number of twenty-four jurors and to complete such panel of twenty-four jurors for the week, and all of said thirteen jurors so summoned, upon being duly sworn, duly qualified as jurors, and were together with the eleven men first above named duly empaneled as the jury of twenty-four men for the week. Thereupon, there being an announcement of ready for trial by the parties to this suit, one of the jurors, viz., F. P. O'Neal, was excused by the court from service on account of the fact that he had heard the facts of the case discussed by one of the plaintiffs, and had formed an opinion therein which he stated might influence his action in ar-

riving at a verdict, thus leaving twenty-three men in the jury panel. There being twenty-three men in the regular panel of jurors, the counsel for the plaintiffs and for the defendant were respectively furnished by the clerk with the list of names of said twenty-three jurors for the purpose of questioning them in this cause and of making their challenges. The defendant by its counsel in open court and in the presence and hearing of the said jurors challenged the juror, R. B. Gee, for cause, in that the said juror was disqualified for service as a juror in the case and as a juror for the week, because he had served as a juror in the District Court of Hunt County for more than six days during the preceding six months before the first day of June, 1908; and in support of said challenge for cause it was shown in evidence that the said R. B. Gee had served as a juror in the District Court of the Sixty-second Judicial District in Hunt County for five consecutive days during the third week of the February term, 1908, of said court, it being the term of said court beginning on the first Monday in February, 1908, and continuing six weeks; and that said Gee had also served as a juror in the District Court of the Eighth Judicial District in said county at the March term thereof, which term began on the second Monday and 9th day of March, 1908, and continuing for nine weeks, for three days, to wit: for three consecutive days during the third week of said last-named District Court, making eight days in all served by the said juror in the District Court of Hunt County since the first Monday in February, 1908, up to and preceding the last day of May, 1908.

The court after hearing the evidence overruled said challenge, whereupon the parties proceeded to make their peremptory challenges, the defendant peremptorily challenging six of said jurors, one of whom was the juror Gee, and the plaintiffs made five challenges, one of whom was the juror Gee. Thereupon, after the parties respectively had made their peremptory challenges upon the lists or slips as aforesaid, the lists or slips so furnished them were returned to the clerk and the jury selected therefrom to try the cause in accordance with such peremptory challenges so made by the parties was as follows: G. W. Allen, E. S. Adair, J. G. Renshaw, D. D. Ables, A. A. Majors, Jack Barling, H. A. Dudding, J. M. Renfroe, M. A. Kidd, A. M. Clair, S. E. Forehand, and Lee Anderson, they being the first twelve names not erased or peremptorily challenged upon either of said lists or slips. Before the said lists or slips were returned to the clerk, and before the jurors so selected to try the cause were announced by the clerk, the defendant by its counsel showed to and advised the court that it had exhausted its six peremptory challenges, using one of them upon the juror R. B. Gee, and that it desired also to challenge peremptorily the jurors A. M. Clair and S. E. Forehand, and particularly the juror A. M. Clair; that said last two named jurors were objectionable to it, but that it had no legal reason to challenge either of them for cause, but would challenge both of them peremptorily, if it could do so, and particularly would it challenge the said juror A. M. Clair as being objectionable and obnoxious to it as a juror in the cause.

The question presented is, Did the court err in overruling the defendant's challenge to the juror R. B. Gee? In other words, is a

juror who has served three days in one District Court of the county and five days in another during the preceding six months disqualified to serve as a juror  The statute provides that all male persons over twenty-one years  of age are competent jurors unless disqualified under some one of the provisions of the chapter.  Among the provisions of the chapter disqualifying a juror is the following: "He must not have served as a juror for six days during the preceding six months in the District Court."  In our opinion the use of the language, "the preceding six months in the District Court," had reference to the District Court in which the challenge was being made.  To make it applicable to all the District Courts of the county when there was more than one, we would be compelled to hold that the language of the statute included the several District Courts.  That it meant the juror must not have served as a juror for more than six days during the preceding six months either in one or all of the District Courts of the county.  At the time of the passage of the statute, August 18, 1876 (8 Gammel's Laws of Texas, p. 914), there was no county containing more than one District Court except Galveston and Harris Counties, each of which contained, in addition to a District Court, a criminal District Court.  The Legislature, in adopting the statute, had reference to the conditions then existing, and intended that to disqualify a juror he must have served full six days during the preceding six months in the District Court for that county.  The statute means that the juror must have served at least six days during the preceding six months in the same District Court.  The question was before this court in the case of Missouri, Kansas & Texas Railway Company of Texas v. Steele, 110 S. W., 172, but it did not then become necessary for us to decide it.  In none of the cases cited is the question decided, and it is before us as one of first impression.  We conclude that the trial court did not err in overruling defendant's challenge to the juror.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.