[Civ. No. 2139. Second Appellate District.—March 18, 1918.]

## R. L. BLISS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

COMMON CARRIERS—CONTRACT FOR SHIPMENT OF LIVESTOCK—WRITTEN NOTICE OF DAMAGE—WAIVER.—Under a written agreement for shipment of livestock, providing that in case of any loss or damage to the shipment, written notice of such loss or damage should be given within ten days after unloading, the right to notice is waived and excused by the carrier where, after receiving less formal notice, it gave directions as to the care and disposition of the stock.

ID.—TIME OF GIVING NOTICE.—Under such an agreement, written notice of loss or damages within ten days after unloading need not be given where the extent and character of the damage could not be ascertained within such time.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Henry T. Gage, and W. I. Gilbert, for Appellant.

Guy E. Maurice, for Respondent.

WORKS, J., *pro tem.*—This is an action for the recovery of damages alleged to have been suffered by plaintiff through injuries to certain of his cattle while in transit over the railroad of defendant, the point from which and the point to which the shipment was made both being within the state. Judgment was awarded to the plaintiff and the defendant appeals.   The appeal is upon the judgment-roll and there is no bill of exceptions.

The findings of fact show that the cattle were shipped under a written agreement between the parties and that it contained the following provision, which we have liberally shortened by ellipses: "Second party . . . agrees that in case any loss or damage shall have been sustained . . . demand or claim for such loss or damage will be made . . . in writing, within ten days after unloading; . . . and that in event of failure so to do, all claims for loss or damage . . . are hereby expressly waived, released and made void, and it is . . . agreed by second party that the amount to be by him claimed . . . shall be adjusted on basis of value at time and place of shipment, not exceeding the declared value as hereinbefore set forth, . . . and in no event is there to be any recovery . . . for any loss of or damage to said livestock . . . in excess of the declared value hereinbefore set forth." It is also found that the respondent made no such written claim or demand within the time limited; but it is further found, in effect, that within forty-eight hours after unloading the cattle, the respondent telephoned an agent of the appellant that they were damaged and then made demand to be compensated for the damage, and stated that he intended to

slaughter the cattle and that he would, after killing them, send a claim for damage; that the agent said, "All right," stated that he would send one of the appellant's claim inspectors to be present at the time of the slaughtering, to ascertain the amount of the respondent's damage; that the inspector did appear for that purpose and then requested the respondent to so handle the cattle that the least loss would result to the respondent; that it was then and there agreed between the inspector and the respondent that, by reason of the damage suffered by them, the cattle were then unfit for slaughter, and that if they were slaughtered immediately an increased loss to the respondent would result; that the inspector requested of the respondent that the cattle be allowed to stand in the respondent's stockyard until such times as, in the judgment of the respondent, the least loss to him would be occasioned; that the respondent assented to the request and used just, fair, and reasonable discretion in determining the time the cattle should so stand, and did not complete their slaughter until the closing time of the respondent's plant on the afternoon of the tenth day after the unloading of the cattle from the appellant's train; that, prior to the making of the agreement under which the damaged cattle were shipped, the parties had frequently executed similar agreements, containing the language above quoted from the agreement now in question; that the respondent had suffered damage to cattle shipped under such agreements; that in each and every instance of such loss the appellant required the respondent, when presenting his written claim for damages, to state his actual loss, and to ascertain the amount thereof by deducting from the local market value of the cattle when slaughtered, if they were in an undamaged condition, their local market value as damaged; that respondent did so, and in many instances he was unable to ascertain the difference in market value until after, and did not present his written claim for damage until after, ten days from the time of unloading; that appellant did, notwithstanding the delay in presenting written claim for damage, make equitable settlements of respondent's claims; that appellant has repeatedly demanded that respondent make all his claims for losses upon the above-mentioned basis, and has notified respondent that unless all claims are so presented appellant will not pay them; that, in the present case, it was impossible

to ascertain the market value of the cattle as damaged until after they were slaughtered; that by reason of the aforesaid facts respondent did not, within ten days after the cattle were unloaded, ascertain the total amount of his damage; that, except for the aforesaid facts, he would have presented a written claim within the required ten days, and that he did present such a written claim twenty-four days after the last of the cattle were slaughtered.

The respondent takes the position, and the trial court decided, that, under the circumstances disclosed by the findings, he was excused from presenting a written claim for his damage within the ten days limited by the terms of the agreement. The authorities which the respondent cites in support of his contention may be grouped under two statements of propositions of law. The first is that where parties contract for such a written notice of damage as is provided for in the agreement that is now before us, the right to notice is waived and excused by the carrier if, after receiving less formal notice in a given case, it proceeds to investigate the damage suffered and makes suggestion or gives direction as to the care or disposition of the damaged property. (*Jones v. Quincy, O. & K. C. R. Co.*, 117 Mo. App. 523, [94 S. W. 735]; *Lasky v. Southern Exp. Co.*, 92 Miss. 268, [45 South. 869]; *Atchison, T. & S. F. Ry. Co. v. Wright*, 78 Kan. 94, [95 Pac. 1132]; *Clubb v. St. Louis & S. F. R. Co.*, 136 Mo. App. 1, [117 S. W. 110]; *Missouri, K. & T. R. Co. v. Hood*, 55 Tex. Civ. App. 636, [120 S. W. 236]; *Gilliland & Gaffney v. Southern Ry. Co.*, 85 S. C. 26, [137 Am. St. Rep. 861, 27 L. R. A. (N. S.) 1106, 67 S. E. 20].) The other proposition is that, under such an agreement, the notice need not be given within the time limited in a case in which the extent or character of the damage suffered cannot be ascertained within that time. (*Burns v. Chicago, R. I. & P. Ry. Co.*, 151 Mo. App. 573, [132 S. W. 1]; *Pierson v. Northern Pac. Ry. Co.*, 61 Wash. 450, [112 Pac. 509].) The position of the appellant is that a carrier has no power to waive such a provision in a contract of shipment, and several decisions of the federal courts are cited in support of the view, but all of those cases except one derive their force and effect from the fact that the provisions in question were contained in a statute or in a form of bill of lading prescribed by statute and which is in general use by railroads engaged in inter-

state commerce, and the damage in each case resulted to property in transit in such commerce. The remaining case is *Clegg* v. *St. Louis & S. F. R. Co.*, 203 Fed. 971, [122 C. C. A. 273]. It appears to be somewhat in conflict with the cases we have cited above from the state courts, although it, too, relates to an interstate commerce shipment. However, we are satisfied of the correctness of the rules announced by the state courts to which we have referred.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court May 17, 1918.